UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZEN DESIGN GROUP, LTD.,

    Plaintiff,

v.

PAUL CLINT,

    Defendant.
_____/

Case No. 08-cv-14309

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT AND ISSUING PERMANENT INJUNCTION**

Plaintiff Zen Design Group, Ltd. ("Zen") sued defendant Paul Clint ("Clint") for patent infringement, seeking a declaration of liability, injunctive relief, compensatory damages, attorneys' fees, and costs. Clint was personally served with the complaint on November 4, 2008. Clint failed to appear and to answer the complaint. No attorney has filed an appearance on his behalf. On January 13, 2009, the Clerk entered a default as to Clint.

On July 14, 2009, Zen moved for a default judgment against Clint pursuant to Fed. R. Civ. P. 55(b)(2). In its motion, Zen withdrew its original request for compensatory damages. On October 26, 2009, the Court ordered Zen to show cause: 1) why its request for a permanent injunction restraining Clint from infringing claims in Zen's patent should not be dismissed as moot, by providing evidence of current infringement; and 2) provide support for why its request for attorneys' fees should not be denied for not complying with Local Rule 54.1.2.

On November 9, 2009, Zen responded to the Court's order indicating that it was withdrawing its request for attorneys fees, "leaving only the issue of whether an injunction should issue." Zen's Response to Order to Show Cause, docket no. 12, p. 1.

With respect to its request for an injunction, the Court is satisfied with Zen's response that although Clint's eBay username is not currently associated with infringing activity, it is highly likely that Clint and his associates or agents are still infringing the '616 patent under other eBay names or through other means such that Zen is entitled to injunctive relief to prevent further infringement. The Court will enjoin Clint, together with any agents, servants, employees, and attorneys, and such other persons in active concert or participation with Clint who receive actual notice of the order, from further infringement of the '616 patent.

## FACTUAL BACKGROUND

Zen designs and markets various consumer products, including hand-held lighting products. Its products are marketed throughout the United States. Zen's president, Sun Yu, filed a patent application for an ultraviolet lighting instrument on October 4, 2002. The instrument is a pen with invisible ink that glows when exposed to ultraviolet light. The pen contains a standard writing tip on one end. On the other end is a ultraviolet LED light that, when activated and directed at the invisible ink on paper, causes the ink to glow and become visible. The United States Patent and Trademark Office issued a patent for the invention on March 1, 2005 entitled "Ultraviolet Light Writing System." U.S. Patent No. 6,860,616 ("'616 patent"). Zen is the owner of the patent by assignment and has since marketed an embodiment of its invention in various toy retailers.

Zen maintains one count of patent infringement. According to the complaint, Clint has marketed at least two products under the name "007 Spy Pen." These products are nearly direct reproductions of pens patented, manufactured, and sold by Zen. When it learned that Clint was infringing its patent, Zen contacted Clint, asked him to cease infringing, and even offered to sell Clint a license for the patent. Clint refused and instead

threatened to sue Zen if it sought to have Clint's products removed from eBay. Zen brought this action in July 2008.

## DISCUSSION

Fed. R. Civ. P. 55(b)(2) provides that a party may apply to the Court for a default judgment when its claim is not for a sum certain or a sum that can be made certain by computation. The Court need not conduct a hearing on a motion for default judgment unless it needs to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). Additionally, notice to the defaulting party is not required when the defaulting party has not appeared personally or by a representative. *Id.*

A. <u>Jurisdiction</u>

In order to render a valid judgment, a court must have jurisdiction over the subject matter and the parties, and must act in a manner consistent with due process. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105 (6th Cir. 1995). A district court must determine whether it has jurisdiction over a defendant who has not appeared in the case before entering a judgment by default against that defendant. The failure to do so requires reversal. *Dennis Garberg and Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767 (10th Cir. 1997).

The Court has subject matter jurisdiction over this dispute. The sole claim in the complaint is for patent infringement, which Court has original jurisdiction to entertain pursuant to 28 U.S.C. § 1338 and 28 U.S.C. § 1331. When subject matter jurisdiction is based on the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute, and if the exercise of personal jurisdiction comports with due process. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); Fed. R. Civ. P. 4(k)(1)(A).

Michigan's long-arm statute provides, in part, that a defendant's transaction of any business within the state provides a sufficient basis upon which a court may exercise limited personal jurisdiction and render personal judgments against the defendant. M.C.L. § 600.705. The Michigan Supreme Court has held that this statute confers the broadest possible grant of personal jurisdiction consistent with due process. *Sifers v. Horen*, 385 Mich. 195, 198-99 (1971). Accordingly, the personal jurisdiction analysis reduces to the single question of whether the exercise of jurisdiction over the defendant comports with due process. *See Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) (interpreting Michigan long-arm statute); *Audi AG and Volkswagon of America, Inc. v. D'Amato*, 341 F. Supp. 2d 734, 742 (E.D. Mich. 2004) (same).

To satisfy due process, a plaintiff must first establish that significant minimum contacts exist sufficient to satisfy "traditional notions of fair play and substantial justice." *The Sports Authority of Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000) (citation omitted). In the Sixth Circuit, three criteria must be met before a court may exercise personal jurisdiction consistent with the dictates of due process: 1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; 2) the cause of action must arise from the defendant's activities there; and 3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.* Where purposeful availment and a cause of action arising from the defendant's contacts with the forum are established, an inference arises that the exercise of personal jurisdiction over the defendant is reasonable. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

When the lawsuit involves the internet, the level of interactivity of the website is indicative of the existence of purposeful availment. A defendant purposefully avails himself of the privilege of acting in a state through his website if the website "is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002). Internet auctions, such as those provided by eBay are, by nature, interactive. *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 821 (E.D. Mich. 2006). Auctions constitute more than a passive website containing only posted information, and will support a finding of purposeful availment, but are probably insufficient to create purposeful availment alone. *Id.*

Here, Clint purposefully availed himself of the benefits and burdens of acting in Michigan. Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the complaint, including jurisdictional averments. *Ford Motor Co v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Constr. v. U.S. Fidelity and Guar.*, 661 F.2d 119, 124 (6th Cir. 1981)). Paragraph five in the complaint indicates that upon information and belief, Clint has offered for sale, and sold, infringing products and/or committed infringing acts in Michigan. The Court must accept as true the fact that Clint has sold the infringing product in Michigan. By actively selling his product in Michigan, Clint has purposefully availed himself of the benefits of Michigan.

Alternatively, the fact that Clint advertised his product on eBay also demonstrates purposeful availment in Michigan. Clint chose to place his spy pens for sale on the auction site of eBay, an interactive website that reveals specifically intended interaction with residents of Michigan. In so doing, Clint should be aware that a purchaser in any state could bid for, and later purchase, the item placed for sale on eBay. Moreover, the eBay

advertisement itself, posted by Clint, expressly indicated that the items for sale would be shipped "Worldwide," or to "United States, Europe, Canada, Australia."  Compl., Ex. B.

With respect to the second element of the due process analysis, whether the current controversy is related to the defendant's forum-related activities, the Court finds that Zen's action for patent infringement relates to Clint's conduct in Michigan.  As alleged in the complaint, and accepted as true for purposes of default judgment, Clint offered for sale, and sold, infringing products and/or committed infringing acts in Michigan.  Zen maintains an action for patent infringement that partially arises out of sales of the infringing products in Michigan.  Alternatively, Zen's claim for patent infringement alleges that Clint also *offered* the infringing product for sale.  This offer was done by posting his product on eBay, where it could easily be purchased by persons in Michigan, and afterwards, shipped to Michigan.  Therefore, the Court finds that Zen's claim of patent infringement arises out of Clint's conduct in Michigan.

Because the Court finds the first two prongs of the due process analysis -- purposeful availment and cause of action related forum-related conduct -- an inference arises that the third prong -- that the exercise of jurisdiction is reasonable -- is also satisfied.  *See CompuServe*, 89 F.3d at 1268.  From the foregoing analysis, therefore, it is clear that the Court has jurisdiction over the subject matter of the dispute and over Clint personally.

    B.  <u>Claim for Patent Infringement</u>

Zen's sole claim is for patent infringement.  Determination of patent infringement is a two-step process in which the Court must first construe the meaning of the patent's claims and then compare the properly construed claims to the allegedly infringing device. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  A device infringes a patent claim if it contains every limitation set

forth in that claim, either literally or by equivalence. *See Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999). "A patent is infringed if any claim is infringed, for each claim is a separate statement of the patented invention." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed. Cir. 1995) (citation omitted).

From the Court's review of the claims listed in the patent attached to the complaint, pictures and description of the infringing product, as well as the well-pleaded allegations in the complaint, which the Court must accept as true, the Court finds that Zen owns the '616 patent and that Clint's "007 Spy Pen" infringes at least Claim 1 in the patent, if not other claims. A finding of infringement of one claim in the patent is sufficient for a finding of patent infringement. *See Pall*, 66 F.3d at 1220.

Claim 1 in the patent consists of a pen-light with a battery in a holder, switch, light-emitting diode module within the battery holder, pen assembly with a cap end and a pen tip, and ink or dye refill in fluid communication with a pen tip extending from the pen tip end and fluorescing in the visible portion of the light spectrum upon exposure to light with a wavelength of less than 420 nanometers. Considering Clint's "007 Spy Pen," which is a virtually identical imitation of Zen's patented product, it is clear that Clint's spy pen contains each and every limitation included in Claim 1 of the '616 patent. This is sufficient to establish patent infringement. Therefore, Zen is entitled to judgment by default on its claim of patent infringement.

    C. <u>Injunctive Relief</u>

Zen requests permanent injunctive relief restraining "Clint together with any agents, servants, employees, and attorneys, and such other persons in active concert or participation with Clint who receive actual notice of the order, from further infringement of

the '616 patent." Compl., Prayer for Relief. The Court will grant this request and issue an injunction.

The Patent Act provides that in cases of patent infringement, "a court may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. The traditional four-factor test applied by courts of equity when considering whether to award permanent injunctive relief applies to disputes arising under the Patent Act. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (finding erroneous circuit court's application of purported "general rule" that courts will automatically issue permanent injunctions against patent infringement absent exception circumstances). Under this four-part test, the plaintiff must demonstrate: 1) that it has suffered an irreparable injury; 2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction. *Id.* The decision whether to grant or deny injunctive relief rests within the equitable discretion of the district court. *Id.* at 934. In exercising its discretion, however, a court does not write on a clean slate or "on a whim," and should be mindful of the long-standing historical practice of granting injunctive relief upon a finding of infringement in the vast majority of cases. *Id.* at 395 (Roberts, C.J., concurring).

Consideration of the four equitable factors as applied to the facts in this case leads the Court to conclude that a permanent injunction is an appropriate remedy for Clint's infringement. Courts frequently treat the first two factors -- irreparable injury and adequacy of money damages -- together, and the Court will do so here. *See, e.g.*, *Sanofi-Synthelabo v. Apotex Inc.*, 492 F. Supp. 2d 353, 397 (S.D.N.Y. 2007); *Acumed LLC v. Stryker Corp.*,

551 F.3d 1323, 1327 (Fed. Cir. 2008). Zen has suffered, and will continue to suffer irreparable injury absent an injunction. The essential attribute of a patent is the right to exclude others from using or selling the invention. *See id.* at 392; *Acumed*, 551 F.3d at 1328. In view of that right, infringement may cause a patentee irreparable harm not remediable by a reasonable royalty. If a reasonable royalty were the exclusive remedy here, Zen would effectively lose its right to exclude others from using its patent.

Additionally, in the absence of an injunction, of which Clint will certainly receive notice, Clint may continue to infringe by selling the 007 spy pens on eBay without being forced to stop. This is because eBay has recently begun to require proof of an injunction prior to removing infringing items from its website. *See* Declaration of Sun Yu, docket no. 13, at ¶ 10. Without an injunction, Clint could continue to market his infringing product online and if sued again, could again refuse to answer the complaint. Clint could continue to infringe without impunity, thereby preventing Zen from vindicating its exclusivity rights under the patent.

Furthermore, Clint's infringement has caused, or is likely to cause, irreparable price erosion as well as injury to Zen's goodwill in the market. Such injury may be irreparable. *See Sanofi-Synthelabo*, 492 F. Supp. 2d at 397. Without an injunction, Clint and others will continue to flood eBay with infringing products that appear identical to Zen's patented products. The others will have a significant advantage since they did not incur costs in developing the patent, yet are able to reap the significant benefits of patent ownership. Lack of development costs will allow them to offer the infringing product at a lower price, thus eroding the price of the product, potentially driving Zen out of the market. Clint's infringement also harms Zen's goodwill and reputation because the infringing products are not manufactured in accordance with the quality standards utilized by Zen in creating its

pens. Therefore, as the number of consumers purchasing Clint's infringing products of an inferior quality increases, the lower the reputation of Zen's pen becomes. Consumers begin to associate Zen's name with the inferior pens, thus harming Zen's goodwill and reputation.

Finally, an award of money damages would be inadequate here because Clint's refusal to appear in this proceeding has prevented Zen from discovering the extent of damages it could recover from Clint. This reinforces the inadequacy of a remedy at law and the irreparability of the harm absent an injunction. Therefore, the first two prongs weigh in favor of granting Zen's request for a permanent injunction.

The third factor -- the balance of hardship between plaintiff and defendant -- also weighs in favor of a permanent injunction. Zen has invested time and resources in developing its designs, obtaining patents, and protecting its intellectual property. Fully aware of Zen's patent, Clint continued to sell the infringing products. It would be unfair to continue to allow Clint to continue its infringement. The hardship to Clint in enjoining him from selling the infringing product is of his own creation and should not be considered in the analysis. Clint could have requested a license from Zen or designed his own non-infringing patent. He chose not to and must face the consequences associated with infringement. On the other hand, the hardship to Zen of preventing it from excluding infringing products from the market would be severe, as discussed above.

Finally, the Court must consider whether the public interest would be disserved by issuance of a permanent injunction. The Court finds this factor weighs in favor of granting injunctive relief. Enjoining Clint from selling his product would not keep from the public the benefits of the '616 patent because the patented design is lawfully available for sale to the public. Conversely, the public's interest is served by permanently enjoining Clint because

by failing to do so, the Court would effectively deny Zen its exclusive right to exclude, reducing the patent's actual value to a fraction of its intended value. Such a result would disincentivize scientific progress. *See Smith Int'l Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1578 (Fed. Cir. 1983). Therefore, the fourth factor also weighs in favor of granting Zen's request for a permanent injunction.

## CONCLUSION AND ORDER

The Court finds that Zen is entitled to judgment by default against Clint. Clint failed to appear in this matter so the Clerk appropriately entered a default against him. Zen has demonstrated that Clint has infringed, and is likely to continue to infringe its patent unless a permanent injunction is issued. Furthermore, the principles of equity, as applied to the facts of this case indicate that a permanent injunction is a appropriate remedy.

**WHEREFORE**, it is hereby **ORDERED** that Zen Design Group does have and recovers the relief prayed for it its complaint as follows:

- Clint is **LIABLE** for infringement of Zen's '616 patent;

- Clint, together with any agents, servants, employees, and attorneys, and such other persons in active concert or participation with Clint who receive actual notice of this order, are **PERMANENTLY ENJOINED** from further infringing the '616 patent;

- Zen's request for attorneys' fees has been **WITHDRAWN** and the Court expresses no opinion as to the merits of the request;

- Zen's request for costs is **GRANTED**. Zen must comply with E.D. Mich. LR 54.1 to collect costs.

**SO ORDERED**.


       s/Stephen J. Murphy, III
       Stephen J. Murphy, III
       United States District Judge

Dated: November 23, 2009

12

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 23, 2009, by electronic and/or ordinary mail.

        s/Alissa Greer
        Case Manager